**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-7752

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

KELVIN BROWN, a/k/a Doom,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Robert G. Doumar, Senior District Judge.  (4:13-cr-00110-RGD-TEM-4)

Argued:  May 3, 2023                                           Decided:  August 16, 2023

Before GREGORY, THACKER, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded with instructions by published opinion.  Judge Gregory wrote the opinion, in which Judge Thacker joined.  Judge Quattlebaum wrote a dissenting opinion.

**ARGUED:**  Brandon J. Brown, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Erica Hashimoto, Director, Tiffany Yang, Supervising Attorney, Lyric Elizabeth Perot, Student Counsel, Jennifer Simon, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Grace Bowen, Special Assistant United States Attorney, Peter G. Osyf, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

GREGORY, Circuit Judge:

On July 30, 2014, a jury convicted Kelvin Brown on seven counts, including two counts of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  At the time of Brown's sentencing, his two § 924(c) convictions carried a five- and twenty-five-year mandatory minimum sentence, respectively.  The district court thus sentenced Brown to thirty years in prison for his § 924(c) convictions, and, together with his other five convictions, to fifty-seven years' imprisonment total.

In July 2020, Brown moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Brown primarily argued that his release was warranted because he was at risk of serious illness from COVID-19 and because, under the First Step Act's amendment to § 924(c) sentencing, he would only be subject to a combined ten-year mandatory minimum for his two § 924(c) convictions if sentenced today.  The district court twice denied Brown's motion, each time without addressing the disparity between his § 924(c) sentence and the much shorter mandatory minimums the First Step Act now prescribes.

We hold that the district court abused its discretion by denying Brown's motion because his disparate sentence creates an "extraordinary and compelling reason" for his early release, and the § 3553(a) sentencing factors overwhelmingly favor a sentence reduction.  We therefore reverse and remand with instructions to rectify that disparity and reduce Brown's prison sentence by twenty years.

2

I.

On May 12, 2014, a grand jury indicted Kelvin Brown and one of his co-defendants in a twelve-count superseding indictment.[1] The indictment charged Brown with eight counts: drug conspiracy in violation of 21 U.S.C. § 846 (Count One); distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) (Counts Six and Eight); distribution and possession with intent to distribute twenty-eight grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(iii) (Count Seven); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts Nine and Eleven); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) (Count Ten); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Twelve).

Brown elected to represent himself at trial "with the assistance of appointed stand-by counsel." *Brown v. United States*, No. 4:17-CV-72, 2018 WL 9990480, at *1 (E.D. Va. Sept. 4, 2018). The jury ultimately found Brown guilty on all counts except Count Seven. The district court sentenced Brown, then thirty-four years old, to 327 months' imprisonment on Count One, sixty months' imprisonment on Counts Six, Eight, and Ten (to run concurrently with Count One), 120 months' imprisonment on Count Twelve (to run concurrently with Count One), and 360 months' imprisonment on Counts Nine and Eleven (to run consecutively with Count One), for a total term of 687 months—or roughly fifty-seven years—in prison. Additionally, the court sentenced Brown to a term of five years of supervised release.

---

[1] Brown was charged with Count One and Counts Six through Twelve, and his co-defendant was charged with Counts One through Five.

The district court imposed the 360-month sentence for Counts Nine and Eleven because § 924(c) prescribes a five-year mandatory minimum for possessing a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i), and a consecutive twenty-five-year mandatory minimum for a subsequent violation of § 924(c), 18 U.S.C. § 924(c)(1)(C)(i). At the time of Brown's sentencing, "a conviction was treated as second or subsequent, triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) (internal quotation marks omitted). Brown was thus subject to a five-year mandatory minimum for his first § 924(c) conviction (Count Nine), and a twenty-five-year mandatory minimum for his second § 924(c) conviction (Count Eleven).

Brown filed a direct appeal, and this Court affirmed his conviction in January 2016. *United States v. Brown*, 636 F. App'x 157, 161 (4th Cir. 2016).

## II.

On July 10, 2020, Brown, who was then forty years old, filed a pro se motion for compassionate release ("Letter Motion") with the district court. In his motion, Brown argued that his preexisting conditions, including bronchitis, sleep apnea, narcolepsy, high blood pressure, esophageal reflux disorder, pre-diabetes, and obesity, place him in "a greater danger of contracting and possibly dying from the complications that accompany the COVID-19 virus." J.A. 62. Brown discussed the anxiety he was experiencing based on his heightened risk of contracting the virus in prison and highlighted the harsh prison conditions imposed by COVID-related lockdowns. In addition to his pandemic-related

4

arguments, Brown pointed out that he is serving a disparate sentence, which supports his early release.  That is, because the First Step Act "clarif[ied] that the 25-year mandatory minimum" for a subsequent § 924(c) offense "applies only when a prior § 924(c) conviction arises from a separate case and already has become final," *McCoy*, 981 F.3d at 275 (internal quotation marks omitted), Brown would be subject to two five-year mandatory minimums, rather than a five-year and a twenty-five-year mandatory minimum, if sentenced for his two § 924(c) offenses today.

Brown also highlighted the steps he has taken to rehabilitate since he was sentenced. While incarcerated, Brown has taken classes on Microsoft Office, drug abuse, anger management, criminal thinking, leadership, and other adult continuing education courses. Further, Brown worked as a tutor to help his fellow inmates attain their GEDs, taught multiple adult continuing education classes, and worked as the head library clerk.  Brown also expressed a desire to contribute to both his family and his larger community.  He stated that he needed to be home to care for his mother, who had recently undergone surgery, his eighteen- and twenty-year-old daughters, and his six-year-old son, who struggles with mental health issues.  Brown further explained that, if released, he had plans to live with his aunt and pursue employment and volunteer opportunities that his brother had already lined up for him.

On July 16, 2020, without requesting a response from the government, the district court denied Brown's motion.  The court first held that Brown's "Letter Motion fails to establish that [he] has complied with the procedural requirements of 18 U.S.C. § 3582(c)" because there was "no evidence" that Brown "exhausted his administrative remedies or that thirty (30) days have passed without action since his request to the warden for a

5

compassionate release." J.A. 84. Moreover, even if it were to waive § 3582(c)'s exhaustion requirement, the court held that Brown's motion would fail because he did "not present extraordinary and compelling reasons to grant his Letter Motion." J.A. 84–85. The district court reasoned that, while Brown expressed concerns about COVID-19, his medical conditions, including "bronchitis, severe sleep apnea, narcolepsy, high-blood pressure, esophageal reflux disorder, and pre-diabetes[,] simply do not rise to the requisite level of extraordinary and compelling." J.A. 85.

Brown appealed, and we vacated the district court's decision and remanded because "the district court abused its discretion in denying Brown's motion without expressly evaluating" "Brown's alleged obesity in its analysis of whether his preexisting medical conditions, considered within the context of the COVID-19 pandemic, satisfied the 'extraordinary and compelling' standard in § 3582(c)(1)(A)(i)." *United States v. Brown*, No. 20-7095, 2021 WL 4461607, at *2 (4th Cir. Sept. 29, 2021) (unpublished). In a footnote, we also noted that our decision in *McCoy* "is relevant to this case in that, there, we recognized that the district courts permissibly treated as extraordinary and compelling reasons for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." *Id.* at *2 n.4 (cleaned up) (quoting *McCoy*, 981 F.3d at 286).

On remand, the district court directed the government to respond to Brown's motion. Brown filed a Supplemental Motion, which, in relevant part, fleshed out his argument that his disparate § 924(c) sentence should be considered an "extraordinary and compelling reason" for his release. Brown also requested the appointment of counsel. In its response

6

brief, the government argued that Brown's motion failed because Brown did not properly exhaust his administrative remedies. In the alternative, the government contended that Brown could not show "extraordinary and compelling reasons" for his release—in part because he declined to be vaccinated—or that the § 3553(a) factors favor a sentence reduction. In his reply, Brown stated that he had a right to refuse the vaccine and explained that he questioned the vaccine's efficacy. He also noted that he had accrued only one disciplinary infraction during his incarceration for defending himself from an assault.

On December 2, 2021, the district court denied Brown's Letter Motion, Supplemental Motion, and motion for counsel. Before assessing the merits, the court stated that Brown failed to establish that he "complied with the procedural requirements of 18 U.S.C. § 3582(c)" because he did not show that he exhausted his administrative remedies or that thirty days had passed without action since his request to the warden for compassionate release. J.A. 130. However, the court noted that exhaustion "is a claims-processing rule subject to waiver if not raised by the Government," and held that it would "proceed to assess the merits of" Brown's claims raised in his Letter Motion, but that exhaustion was not waived as to the claims in Brown's Supplemental Motion. J.A. 130–31.

Addressing Brown's Letter Motion, the district court began by stating that "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." J.A. 131 (citation omitted). The court recognized that Brown's obesity "is a significant fact that puts him at increased risk of a severe COVID-19 infection," but found

7

that "significant factors also mitigate against a finding of extraordinary and compelling reasons." J.A. 132. Namely, the court focused on the fact that Brown declined the Pfizer-BioNTech vaccine. According to the court, "[w]hile Defendant certainly has a personal right to refuse vaccination, 'he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.'" J.A. 132 (citation omitted).

The district court further found that Brown could not prove that he has a particularized risk of contracting COVID-19 at his prison facility because, as of the district court's decision, the facility where Brown was incarcerated had zero confirmed cases of the virus among inmates and only one case among staff. Moreover, the court reasoned that any transmission would be mitigated by the high vaccination rate at that facility, and that Brown's high blood pressure and obesity are "common chronic conditions that [Brown's] facility can help manage." J.A. 133. Accordingly, the court found no "extraordinary and compelling reason" for Brown's release "based on his alleged susceptibility to COVID-19." J.A. 134.

Next, the district court found that there was "no proof [Brown] brought" his claims in the Supplemental Motion (including, as relevant here, that the stacking of his § 924(c) sentences warrants his release) "before the BOP," and reiterated that the government had "not waived its exhaustion argument as to the Supplemental Motion." J.A. 134. While the court noted that it is "empowered to waive exhaustion requirements," it held that even if it "were to waive exhaustion, the § 3553(a) factors here do not support early release." J.A. 134–35. Before addressing the factors, the court stated that it "carefully weighed [them] at sentencing, imposing a sentence that reflected the seriousness of the offense among other

8

factors, including Defendant's self-representation at trial," and imposed a within-guidelines sentence.  J.A. 135.  The court then assessed the factors in one paragraph:

> Defendant has had a troubled past with a criminal history category of V, reflecting a criminal history that has gotten worse leading up to the offenses for which Defendant was convicted.  Defendant has only served approximately 11% of his sentence at this time, which would not serve to deter other[s] from similar activity, which involved large scale drug distribution . . . for over a decade.  Finally, Defendant's multiple firearms convictions suggest to the Court that community safety would be harmed by Defendant's early release.  The Court appreciates Defendant's service while imprisoned, including his work in the library and as a GED tutor.  However, the Court cannot say a reconsideration of the § 3553(a) factors would lead to a different result than arrived at during Defendant's sentencing.

J.A. 135–36 (citation omitted).  The court thus concluded that "the § 3553(a) factors do not support [Brown's] release" and denied his motions.  J.A. 136.  This appeal followed.

## III.

This Court reviews the denial of compassionate release motions pursuant to 18 U.S.C. § 3582(c)(1)(A) for an abuse of discretion.  *United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021).  "In doing so, we ensure that the district court has not acted arbitrarily or irrationally, has followed the statutory requirements, and has conducted the necessary analysis for exercising its discretion."  *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021).

## IV.

As a general matter, a sentencing court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  However, Congress created an exception to that general rule when "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i).  "For many years, district courts could reduce a term of imprisonment

9

on that ground only 'upon motion of the Director of the Bureau of Prisons.'" *High*, 997 F.3d at 185 (quoting 18 U.S.C. § 3582(c)(1)(A) (2002)). But in 2018, Congress passed the First Step Act, which "permits incarcerated defendants to file motions for compassionate release directly with the district court, provided they have fully exhausted their administrative remedies." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

"To grant [] a compassionate release motion, the district court must conclude that the . . . prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief," and "that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). Here, the district court found that Brown's "health and alleged susceptibility to COVID-19 do[] not present extraordinary and compelling reasons to grant his Letter Motion," J.A. 131, and declined to consider whether Brown's disparate § 924(c) sentence constitutes an "extraordinary and compelling reason" for a sentence reduction because Brown failed to exhaust that claim. In the alternative, the court held that the § 3553(a) factors do not support Brown's release. Brown's challenges to this decision are many, but they boil down to two central contentions: the district court abused its discretion (1) by finding that the risk posed by COVID-19 does not amount to an "extraordinary and compelling reason" for his release, and (2) by failing to address his disparate § 924(c) sentence.

Taking each argument in turn, we find Brown's first argument unpersuasive, but agree that the district court should have granted Brown's motion based on his disproportionately long sentence.

10

A.

We first address Brown's argument that COVID-19 and his health conditions warrant compassionate release. To establish that the risk posed by COVID-19 presents an "extraordinary and compelling reason" for release, a defendant must allege "that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [his] preexisting medical condition increases [his] risk of experiencing a serious, or even fatal, case of COVID-19." *High*, 997 F.3d at 185. While this "inquiry is 'multifaceted' and must account for the 'totality of the relevant circumstances,'" *Bethea*, 54 F.4th at 832 (quoting *United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022)), courts within the Fourth Circuit have looked to whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility," *Hargrove*, 30 F.4th at 196 (cleaned up). Applying that standard, the district court determined that Brown's obesity and high blood pressure put him at an increased risk of a severe COVID-19 infection, but that risk was mitigated by Brown's refusal to receive the COVID-19 vaccine, and that Brown did not show that he had a particularized risk of contracting the disease at his facility.

Brown lodges numerous objections to this decision, but none are availing. For one, he argues that the district court erroneously adopted a per se rule that an individual cannot establish an "extraordinary and compelling reason" for release based on COVID-19 if he refused the vaccine. We agree that district courts should always consider a defendant's "individual circumstances" when assessing compassionate release claims, even when the defendant seeks relief on COVID-19 grounds and has refused to be vaccinated. *United*

11

*States v. Singleton*, No. 21-6798, 2022 WL 5240607, at *1 (4th Cir. Oct. 6, 2022)

(unpublished). Courts should consider, for example, whether a defendant is "unable to

receive or benefit from a vaccine, or [whether] they remain vulnerable to severe infection,

notwithstanding the vaccine." *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022).

But Brown made no argument that he was "unable to receive or benefit from [the] vaccine."

*Id.* Rather, he appears to have refused the vaccine because he questioned its efficacy.

Moreover, the district court concluded that, while Brown's high blood pressure and obesity

put him at increased risk of severe COVID-19 infection, the vaccine "could virtually

eliminate that risk." J.A. 132 (citation omitted).[2] The district court thus did not abuse its

discretion by finding that, in Brown's case, his vaccination status mitigated his

particularized susceptibility to COVID-19.

Brown's objections to the court's assessment of his risk of contracting the virus fare

no better. Brown argues that the district court's focus on the low number of COVID-19

cases at his facility "incorrectly demands that an outbreak occur before a movant can

demonstrate a particularized risk of contracting the disease," and alleges that the case

numbers are likely inaccurate based on inadequate testing. Opening Br. 26. To be sure,

the current case-count at a facility does not capture the long-term risk of transmission. And

certainly, the district court's analysis might have been more compelling if it included, for

---

[2] Brown challenges this analysis as deficient because the district court "failed to properly assess his individual susceptibility to the virus." Opening Br. 24. While the court's analysis could have been more thorough, it considered Brown's COVID-19-based "arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) (citation omitted).

instance, an assessment of the precautions the facility is taking to prevent the spread of the virus, the risk of transmission inherent in a congregate setting, and the aggregate case count at the facility. Its failure to do so, however, does not render its analysis "arbitrar[y] or irrational[]." *High*, 997 F.3d at 185. Rather, the court's reasoning "fell within the scope of its discretion." *Id.* at 187.

Brown also challenges the district court's focus on the vaccination rate at his facility and the facility's ability to manage Brown's underlying conditions. For similar reasons, however, these arguments fail. The district court relied on a medical resource regarding the COVID-19 vaccine and an analogous district court decision to conclude that "the high number of vaccinations at [Brown's facility] assist in limiting the spread of COVID-19" and that Brown's facility could help manage his "common chronic conditions." J.A. 133. While we might have applied a different analysis in the first instance, we cannot say that the district court's consideration of those factors rendered its "extraordinary and compelling reasons" determination an abuse of discretion.

Accordingly, we affirm the district court's holding that the risk posed by COVID-19 does not create an "extraordinary and compelling reason" for Brown's release.

B.

We next consider Brown's argument that his disproportionately long sentence warrants a sentence reduction. As discussed, Brown was convicted of two § 924(c) offenses, and the district court sentenced him pursuant to a pre-First Step Act regime that imposed a five-year mandatory minimum for an initial § 924(c) conviction and a twenty-five-year mandatory minimum for a second or subsequent § 924(c) conviction, "even if the

13

first § 924(c) conviction was obtained in the same case." *McCoy*, 981 F.3d at 275. As a result, Brown received a thirty-year sentence for his two § 924(c) offenses—five years for his first offense and twenty-five years for the second. However, after the First Step Act "amend[ed] § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only when a prior conviction under § 924(c) already has become final," "the 25-year mandatory minimum . . . no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) (internal quotation marks omitted). As a result, an individual facing Brown's convictions today would only be subject to a five-year mandatory minimum sentence for each § 924(c) conviction, or ten years total.

The district court declined to consider whether Brown's disparate sentence for his § 924(c) convictions constitutes an "extraordinary and compelling reason" for his release because it concluded that Brown failed to exhaust his administrative remedies for the claims in his Supplemental Motion, which included this particular argument. The parties now agree that this conclusion was in error given our recent holding that "§ 3582(c)(1)(A) does not require issue exhaustion." *United States v. Ferguson*, 55 F.4th 262, 269 (4th Cir. 2022). *Ferguson* makes clear that a compassionate release motion in the district court is not limited "to only those grounds for compassionate release [the defendant] identified in his request to the BOP." *Id.* at 268. In other words, to the extent the district court held that exhaustion was waived as to Brown's Letter Motion, Brown did not need to separately exhaust his arguments raised in his Supplemental Motion. And regardless of *Ferguson*, Brown raised his § 924(c) argument in his initial Letter Motion when he stated: "In my

14

case, the 924(c)'s were stacked and thus resulted in a[n] extreme sentence disparity." J.A. 65. Therefore, the district court's decision to "assess the merits of [Brown's] original claims" should have triggered its consideration of Brown's § 924(c) argument. J.A. 131.

In the alternative, the district court stated that "[e]ven if [it] were to waive exhaustion, the § 3553(a) factors here do not support early release." J.A. 135. In assessing the § 3553(a) factors, however, the court again failed to consider Brown's disparate sentence. Instead, the court focused on Brown's criminal history, the nature of his offenses, the small portion of his sentence he had served, and the danger to Brown's community posed by his early release. While the court recognized Brown's "service while imprisoned, including his work in the library and as a GED tutor," it held that "a reconsideration of the § 3553(a) factors would [not] lead to a different result than arrived at during [Brown's] sentencing." J.A. 135–36.

Because Brown's disparate sentence is relevant to both the "extraordinary and compelling reasons" inquiry and the § 3553(a) factors, the district court's failure to engage with that argument at either step of the compassionate release analysis was error. For the reasons to follow, "we exercise our discretion to correct the error." *United States v. Worley*, 685 F.3d 404, 408–09 (4th Cir. 2012).

i.

To start, we consider Brown's disparate sentence within the "extraordinary and compelling reasons" inquiry. In *McCoy*, we reviewed two district courts' grants of compassionate release based, in part, on the defendants' disparate § 924(c) sentences. 981 F.3d at 277–79. In affirming those decisions, we held that the courts "appropriately

15

considered two distinct features of the defendants' § 924(c) sentences in applying the 'extraordinary and compelling reasons' standard": "the sheer and unusual length of the [defendants'] sentences," and "the gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *Id.* at 285 (internal quotation marks omitted). Both of those distinct features are present in Brown's case and establish "extraordinary and compelling reasons" for reducing his sentence.

First, we are struck by "the sheer and unusual length" of Brown's sentence. *Id.* At thirty-four-years old, Brown was sentenced to fifty-seven years in prison—functionally a life sentence—for various drug distribution and gun possession offenses. Brown's prison sentence is substantially longer than the average sentence imposed for far more serious and violent crimes. For example, in 2022, the national average sentence for murder was 261 months (or about twenty-two years), and the national average sentence for kidnapping was 184 months (or about fifteen years). U.S. Sentencing Commission, *Statistical Information Packet, Fiscal Year 2022, Fourth Circuit*, https://www.ussc.gov/sites/ default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/4c22.pdf [https://perma.cc/9XBB-TZZQ] (last visited July 24, 2023). While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown, who was not charged with causing any physical violence or injury, is serving a sentence more than two-and-a-half times the length of today's average murder sentence. If that were not enough, Brown also received a far lengthier sentence than his co-defendants, each of whom was sentenced to less than twenty years of

16

incarceration—nearly a third of Brown's sentence—and some of whom were sentenced to ten years or less.

Second, there is a clear "gross disparity" between Brown's "sentence[] and the sentence[] Congress now believes to be an appropriate penalty for [his] conduct." *McCoy*, 981 F.3d at 285. If sentenced today, Brown would have been subject to a ten- (rather than thirty-) year mandatory minimum for his two § 924(c) convictions. That twenty-year "disparity is primarily the result of Congress' conclusion that sentences like [Brown's] are unfair and unnecessary, in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted, as well as a legislative declaration of what level of punishment is adequate." *Id.* (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)). While Congress did not make this change to § 924(c) retroactive, § 3582(c)(1)(A) allows for "individual relief" based on a § 924(c) sentencing disparity "in the most grievous cases." *Id.* at 287. The sheer length and disparate nature of Brown's sentence make clear that this is such a case.

ii.

The § 3553(a) factors, too, favor Brown's early release. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed" to "provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training," § 3553(a)(2), and "the need to avoid

17

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6).

In one cursory paragraph, the district court concluded that the § 3553(a) factors do not favor a reduction of Brown's sentence. But a proper consideration of the relevant § 3553(a) factors, as is required by our precedent, *see Bethea*, 54 F.4th at 833, supports the opposite conclusion. For one, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), clearly favors Brown. Because Brown was subject to a mandatory-minimum sentence that is twenty years longer than it would be if he were sentenced today for the same conduct, a sentence reduction is necessary to mitigate the gross disparity between Brown and similarly situated defendants.

Brown's disparate sentence also speaks to, among other factors, "the need for the sentence imposed" to "provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct." § 3553(a)(2). The First Step Act's amendment to § 924(c) reflects Congress's judgment that sentences like Brown's are "dramatically longer than necessary or fair," *McCoy*, 981 F.3d at 286, and, in turn, are not necessary to serve the ends of § 3553(a)(2). Moreover, in Brown's case, the necessity of the additional twenty years on his sentence is particularly suspect because the conditions created by COVID-19, "not contemplated by the original sentencing court, [have] undoubtedly increase[d] [his] prison sentence's punitive effect." *Kibble*, 992 F.3d at 336 (Gregory, C.J., concurring). According to Brown, his facility was placed on a lockdown in response to the pandemic, during which he was "confined to [his] cell[] for 22[.5] hours a day," and the recreation

18

areas were closed. J.A. 62. Brown also reported being "crammed up in very small cells with roommates" and "little to no ventil[ation]." J.A. 63. Even if those factors have been mitigated by the evolving circumstances of the pandemic, that they plagued Brown at any point "has made [his] incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). Therefore, Brown's drastic sentence, which might have been "'sufficient but not greater than necessary' before the coronavirus pandemic[,] may no longer" be justified. *Kibble*, 992 F.3d at 335 (Gregory, C.J., concurring).

If the district court had considered these facts, it might have realized that they contradict the very limited reasoning it *did* provide. For example, the court stated that Brown had "only served approximately 11% of his sentence at th[at] time, which would not serve to deter other[s] from similar activity," and that his "multiple firearms convictions suggest . . . that community safety would be harmed by [his] early release." J.A. 135. Yet the fact that Congress has since concluded that § 924(c) sentences like Brown's are "unfair and unnecessary," *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723), indicates that Brown's fifty-seven-year sentence is neither necessary to deter others from similar criminal activity nor "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2).

Additionally, Brown's claim that he incurred only one disciplinary infraction throughout his incarceration—a fact the district court also failed to mention—casts further doubt on the court's concern for the safety of the community. And while the court did briefly consider Brown's rehabilitative efforts while incarcerated, it failed to weigh how those

19

efforts ameliorate any risk posed to Brown's community upon his release. While incarcerated, Brown has not only bettered himself through his completion of a variety of courses but has also given back to his community by tutoring, teaching adult continuing education classes, and working as a library clerk. This "postsentencing rehabilitation" minimizes the "need for the sentence imposed" to "protect the public from further crimes of the defendant," and "provides the most up-to-date picture of [Brown's] 'history and characteristics,'" which also favors a sentence reduction. *Pepper v. United States*, 562 U.S. 476, 491–92 (2011) (quoting § 3553(a)(1)–(2)). Taking these facts together, we simply cannot square Brown's fifty-seven-year sentence with the aims of the § 3553(a) factors.

Nevertheless, we take seriously the district court's concerns about Brown's severe criminal history and the serious nature of his charged conduct. We also recognize that Brown's disparate § 924(c) sentence accounts for only thirty years of his fifty-seven-year sentence, and that reducing his sentence to time served might be too strong a medicine for remedying that disparity. Fortunately, "[§] 3582(c)(1)(A) does not demand that [courts] choose between immediate release and wholesale denial. Instead, it allows for any sentence reduction up to and including time served." *Rodriguez*, 492 F. Supp. 3d at 316. We therefore balance those competing concerns by reversing and remanding with instructions to grant Brown's motion and reduce his sentence by twenty years. A 447-month (or approximately thirty-seven year) sentence reflects the seriousness of Brown's offenses and criminal history while rectifying the twenty-year disparity in Brown's § 924(c) sentence and accounting for the numerous changed circumstances since Brown was sentenced nine years ago. Additionally, because "the risk of recidivism is inversely

20

related to an inmate's age," Brown's release at over seventy years of age should further alleviate the district court's concern for the risk to public safety posed by Brown's release. *United States v. Howard*, 773 F.3d 519, 553 (4th Cir. 2014).

"Ordinarily, we understand that district courts wield broad discretion in deciding compassionate release motions." *Malone*, 57 F.4th at 177. So, in a different case, we might remedy the district court's error by remanding for the district court to consider Brown's disparate sentence in the first instance. Yet the district court here has already had two opportunities to review Brown's compassionate release motion: its initial denial of Brown's motion in July 2020, and its second denial in December 2021 after we remanded Brown's case for further consideration. Each time, the district court neglected to address Brown's disparate sentence. That neglect persisted despite our express recognition in our previous remand order that *McCoy*—and its holding that disparate § 924(c) sentences can constitute "extraordinary and compelling reasons" for release—"is relevant to this case." *Brown*, 2021 WL 4461607, at *2 n.4.

More fundamentally, any additional analysis by the district court is unnecessary because any further decision that declined to reduce Brown's sentence to ameliorate his § 924(c) sentence disparity would constitute an abuse of discretion. In other words, Brown's disparate sentence so clearly meets the "extraordinary and compelling reasons" standard, and the § 3553(a) factors so clearly favor a sentence reduction, that it would be arbitrary or

irrational to deny Brown's motion. *See High*, 997 F.3d at 185.[3]  "[I]n the end, no analysis or explanation could persuade us that compassionate relief was appropriately denied," particularly because we already "allow[ed] the district court to consider the full record under the proper framework." *Malone*, 57 F.4th at 178 (Harris, J., concurring in part).  Remanding for further analysis would therefore offend basic notions of judicial economy.

Simply put, "in cases—as in here—where the record presents such extraordinary conditions" that so clearly favor a sentence reduction, and the district court has twice declined to engage with that record, "we are compelled to conclude" that relief is warranted. *Id.* at 177 (majority opinion) (reversing denial of compassionate release motion and remanding with instructions for district court to grant motion); *see also Worley*, 685 F.3d at 408–09 & n.1 (reversing, without remanding, district court's imposition of certain special conditions of supervised release because they were unsupported by the record).

V.

For the foregoing reasons, we reverse the district court's denial of Brown's compassionate release motion and remand with instructions to grant his motion and reduce his prison sentence to 447 months.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

[3] For this reason, we are not swayed by the government's argument that the district court's threadbare analysis was reasonable because the same judge also sentenced Brown originally.  To be sure, we have found that fact "significant" when evaluating the procedural adequacy of a district court's decision denying compassionate release. *High*, 997 F.3d at 189.  However, that holding is of limited persuasive value where, as here, we are not reversing the district court's decision on purely procedural grounds.

QUATTLEBAUM, Circuit Judge, dissenting:

In an extraordinary and, in my view, regrettable decision, the majority reverses the district court's order denying Brown's motion for compassionate release. It does so only by imposing a standard for explaining decisions that is more demanding than what the Supreme Court recently established. *Concepcion v. United States*, 142 S. Ct. 2389, 2405 (2022) ("All that is required is for a district court to demonstrate that it has considered the arguments before it."). But the majority does not stop there. It then usurps the district court's assigned responsibility by stepping in to re-weigh the sentencing factors, substitute its judgment for that of the district court and order a 20-year sentence reduction. The majority may well be troubled by the length of Brown's original sentence. But our ordered system of justice requires that appellate courts apply standards set forth by the Supreme Court. And it requires that discretionary sentencing decisions be made by district court judges. The majority today does neither. I dissent.

I.

First, contrary to the majority's conclusion, the district court adequately addressed Brown's argument that his stacked § 924(c) convictions constituted "extraordinary and compelling reasons" for granting compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). All the court had to do was demonstrate that it considered that argument. *Concepcion*, 142 S. Ct. at 2405. And it did that. The district court explicitly identified Brown's § 924(c) argument. *See* J.A. 134 ("Defendant's Supplemental Motion asks the [c]ourt to consider whether Defendant's 'stacked' gun charges under 18 U.S.C. § 924(c) constitute

23

extraordinary and compelling reasons for a sentence reduction."). After identifying that

argument, and others, it concluded that the "§ 3553(a) factors do not support [Brown's]

release." J.A. 136. The court also listed the § 3553(a) factors and explained that it

"carefully weighed [them] at sentencing" along with "the seriousness of the offense among

other factors." J.A. 135. And it noted that the original sentence "was within the Guidelines

range." J.A. 135.

> The district court then discussed the § 3553(a) factors:

> [Brown] has had a troubled past with a criminal history category of V,
> reflecting a criminal history that has gotten worse leading up to the offenses
> for which [Brown] was convicted. [Brown] has only served approximately
> 11% of his sentence at this time, which would not serve to deter other[s] from
> similar activity, which involved large scale drug distribution in the Hampton
> Roads area for over a decade. Finally, [Brown's] multiple firearms
> convictions suggest to the Court that community safety would be harmed by
> [Brown's] early release. The Court appreciates [Brown's] service while
> imprisoned, including his work in the library and as a GED tutor. However,
> the Court cannot say a reconsideration of the § 3553(a) factors would lead to
> a different result than arrived at during [Brown's] sentencing.

J.A. 135–36. All of that supported the court's ultimate conclusion that "the § 3553(a)

factors do not support [Brown's] release." J.A. 136. It also demonstrates that the district

court considered Brown's § 924(c) stacking argument but decided that, even considering

it, the sentencing factors did not support release.

Nothing more was required. The district court was not required to rebut Brown's

argument. The Supreme Court has been clear on this. *Concepcion*, 142 S. Ct. at 2405

(holding district courts need not rebut each of the parties' arguments). So have we. *United

States v. Reed*, 58 F.4th 816, 823 (4th Cir. 2023) ("Nor does the First Step Act require a

district court to make a point-by-point rebuttal of the parties' arguments."). Nor are district

24

courts required to provide detailed explanations or detail why the sentencing factors outweigh the defendant's arguments. *Concepcion*, 142 S. Ct. at 2404. All they are required to do is demonstrate that they considered the parties' arguments. *Id*. at 2405. And that does not even require explicitly identifying the argument. *United States v. Mangarella*, 57 F.4th 197, 203–04 (4th Cir. 2023) (an omission of any discussion of an argument "does not by itself establish that the district court failed to *consider* [the argument] at least implicitly. . . ." (emphasis in original)).

The Supreme Court has set a low bar for demonstrating an argument was considered. *Reed*, 58 F.4th at 823. In describing Brown's § 924(c) argument and finding the § 3553(a) sentencing factors still did not support release, the district court cleared it.

II.

But my disagreement with the majority's opinion runs deeper. Not only does the majority improperly conclude that the district court did not consider the § 924(c) argument that it explicitly referenced, it then usurps the role of the district court to reduce Brown's sentence itself.

First, the majority effectively re-weighs the § 3553(a) factors. For example, it rejects the district court's determination that because Brown had only served 11% of his sentence, granting compassionate release would not deter others from engaging in similar conduct. According to the majority, the First Step Act's sentence reduction for stacked § 924(c) convictions means the "afford adequate deterrence" factor cuts in favor of reducing Brown's sentence. Maj. Op. at 18–20. But Congress did not make the reduction in

25

sentences for stacked § 924(c) convictions retroactive. So the effect of that reduction on the § 3553(a) factors is a point about which reasonable minds can disagree.[1] It cannot mean that the district court's reasoning was an abuse of discretion.

The majority also makes an argument in favor of granting compassionate release that Brown did not even make. According to the majority, because of measures the prison took to avoid the spread of COVID-19, Brown's time in prison was actually more punitive than it would otherwise have been. This, the majority insists, undermines the district court's reasoning that Brown had served only 11% of his term. Perhaps a district court might reach this conclusion. But we should not fault the district court for not agreeing with it sua sponte.[2]

---

[1] Because if the majority is right, the opposite would have to be true. A subsequent statutory increase in a sentence would cut against a sentence reduction when considering the § 3553(a) factors. I am not convinced that statutory changes, up or down, should so directly impact motions for compassionate release when such changes are not made retroactive.

[2] I recognize Brown included the measures taken by the prison in response to COVID-19 in his "extraordinary and compelling circumstances" argument. But the majority affirms the district court's rejection of Brown's argument that the effect of COVID-19, including the prison's response to it, created the extraordinary and compelling circumstances required to obtain compassionate release relief. Despite that, and even though Brown did not argue the steps the prison took to guard against the spread of COVID-19 impacted the § 3553(a) factors, the majority resuscitates the COVID-19 issue. What's more, the majority's logic would effectively result in granting the compassionate release motion in one way or another due to COVID-19: if the prison fails to mitigate the spread of the novel virus, the risk of illness would require reduction; but, if the prison takes steps to mitigate the risk of illness, that results in a more punitive sentence than contemplated by the district court at sentencing. I am not trying to minimize the way in which COVID-19 impacted our society as a whole and prisons specifically. But in my view, the majority's reasoning gives COVID-19 a greater role in motions for compassionate release than is warranted.

26

The majority then rejects the district court's reasoning that because of his multiple firearm convictions, community safety would be harmed by Brown's early release. According to the majority, the district court "failed to weigh how [his rehabilitative] efforts [while in prison] ameliorate any risk posed to Brown's community upon his release." Maj. Op. at 19. But the district court considered those efforts. It even identified some of them. It just concluded that they were outweighed, on balance, by the § 3553(a) factors and the needs for incarceration. In other words, the district court considered the same evidence the majority points to and evaluated it differently. But district courts have discretion in evaluating the § 3553(a) factors. *United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022); *see also Concepcion*, 142 S. Ct. at 2404 ("The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review."). If district court discretion means anything, it means we must not second guess district courts just because we might have come to a different conclusion if we were sitting in their shoes. But that is not all. After saying it "take[s] seriously the district court's concerns about Brown's severe criminal history and the serious nature of his charged conduct," the majority "balance[s] those competing concerns by reversing and remanding with instructions to grant Brown's motion and reduce his sentence by twenty years." Maj. Op. at 20. It continues by explaining,

> A 447-month (or approximately thirty-seven year) sentence reflects the seriousness of Brown's offenses and criminal history while rectifying the twenty-year disparity in Brown's § 924(c) sentence and accounting for the numerous changed circumstances since Brown was sentenced nine years ago. Additionally, because "the risk of recidivism is inversely related to an inmate's age," Brown's release at over seventy years of age should further

27

alleviate the district court's concern for the risk to public safety posed by Brown's release. *United States v. Howard*, 773 F.3d 519, 553 (4th Cir. 2014).

Maj. Op. at 20-21.

This is remarkable. The majority abandons our role as a reviewing court and, for all practical purposes, assumes the role of a factfinder. Even if a prisoner establishes extraordinary and compelling circumstances, a district court is "not required to grant the defendant's motion for a sentence reduction." *Hargrove*, 30 F.4th at 195 (internal quotation marks omitted). District courts must consider the § 3553(a) factors in deciding whether to exercise their discretion to reduce a sentence. *Id.* at 194; *see also United States v. Troy*, 64 F.4th 177, 184 (4th Cir. 2023) ("In resolving a motion under the First Step Act, a district court's discretion is broad and its burden light."). The majority claims that discretion for itself, rather than affording the district court the discretion the law requires.

The majority justifies this usurpation of the district court's responsibilities by declaring that the district court already had two chances to address Brown's argument about his § 924(c) convictions. It maintains that the district court did not address the § 924(c) argument in its first order and, despite being instructed to do so in our prior decision, the district court failed to address the argument in its second order as well. It is correct that we previously remanded Brown's case "for further proceedings consistent with" our *High*, *Kibble* and *McCoy* decisions. *United States v. Brown*, No. 20-7095, 2021 WL 4461607, *2 (4th Cir. Sept. 29, 2021) (per curiam) (unpublished).[3] And it is also correct that in a

___

[3] *United States v. High*, 997 F.3d 181 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

footnote, we flagged that *McCoy* supports the argument that the disparity between stacked § 924(c) sentences and those after the First Step Act precluded stacking constitutes extraordinary and compelling circumstances for purposes of a motion for compassionate release. *Id.* at *2 n.4. But as already described, the district court did in fact address the argument in a way that, if not satisfactory to the majority, satisfies the Supreme Court's standard. And even if one were to conclude that the district court did not adequately address the issue—which I do not—those instructions are hardly so specific that we should take the drastic step the majority takes here.

In sum, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence[.]" *Solem v. Helm*, 463 U.S. 277, 290, n.16 (1983). But to me, that is exactly what the majority opinion does.

I dissent.[4]

---

[4] My dissent is limited to part IV.B.