**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-6242

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LONNIE EDWARD MALONE,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Senior District Judge.  (1:07-cr-00037-JPJ-1)

Argued:  September 13, 2022                                    Decided:  January 5, 2023

Before GREGORY, Chief Judge, KING, and HARRIS, Circuit Judges.

Reversed and remanded with instructions by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge King joined.  Judge Harris concurred in part and wrote a concurring opinion.

**ARGUED:**  Arin Melissa Brenner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Laura Taylor, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, Lisa M. Lorish, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Daniel P. Bubar, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

GREGORY, Chief Judge:

Lonnie Malone was sentenced to 330 months in federal prison for the use of a firearm to facilitate a drug offense in violation of 18 U.S.C. §§ 924(c), 924(c)(1)(B)(i) and for a drug conspiracy in violation of 21 U.S.C. §§ 846, 841(b)(1)(B). After serving eleven years in prison, Malone filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Malone argued that his significant health decline and advanced age justified his release. The district court denied his motion, relying solely upon a now-inapplicable policy statement, United States Sentencing Guidelines ("Sentencing Guidelines") Section 1B1.13. *See* U.S.S.G. § 1B1.13. The following year, the Bureau of Prisons ("BOP") deemed Malone severely at risk of contracting COVID-19 and placed him in home confinement through authority granted by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Soon thereafter, Malone filed a subsequent motion for compassionate release reiterating his advanced age and severe health conditions. In addition, Malone presented supplementary arguments that focused on the COVID-19 pandemic, relevant 18 U.S.C. § 3553(a) factors, the "extreme" nature of his sentence, and his inability to receive government benefits while in home confinement. The district court again denied Malone's motion for compassionate release.

Upon review, we conclude that the district court abused its discretion by failing to properly assess the following factors which would warrant Malone's compassionate release: his ailing health, advanced age, and relevant 18 U.S.C. § 3553(a) factors. Had it addressed that evidence, as more fully discussed below, its analysis of whether Malone is entitled to compassionate release would have likely merited a different outcome.

Therefore, we reverse and remand the district court's decision with instructions to grant Malone's motion for compassionate release.

## I.

On May 19, 2008, after accepting a fifteen-year plea deal, Malone was sentenced to 330 months in federal prison for possession of a short-barreled shotgun in furtherance of a drug trafficking offense in violation of 18 U.S.C. §§ 924(c) and 924(c)(1)(B)(i), as well as conspiracy to distribute fifty grams or more of a mixture containing methamphetamine under 21 U.S.C. §§ 846 and 841(b)(1)(B). Malone's sentence was to be followed by five years of supervised release. At the time of sentencing, Malone claimed to suffer from colon-rectal cancer, asthma, and depression.

On November 25, 2014, Malone—proceeding pro se—filed a request for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Sentencing Guidelines.[1] As part of his sentence reduction request, Malone explained to the court that though his colon-rectal cancer was in remission, a 2010 surgery sewed his rectum shut, and he now lives with a colostomy bag permanently affixed to his body. Medical records accompanying the motion also detail his cystic kidney disease, hernia, malignant neoplasm of rectum, hypertension, morbid obesity, neoplasm of uncertain behavior, hyperlipidemia, and other specified disorders of his liver. By form order—and without further

---

[1] Effective on November 1, 2014, Amendment 782 revised the Sentencing Guidelines and generated a two-level reduction for all offenses involving any controlled substance.

explanation—the district court granted Malone's motion and reduced his sentence from 330 months to 288 months.

Thereafter, Malone's health continued to steadily decline. At just shy of sixty-nine years of age, he filed his first motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on June 17, 2019. He requested that the district court "enter an Order directing the BOP to release him from custody, or . . . transfer [his] place of confinement to his brother and sister-in-law's home." J.A. 33. Malone explained his countless issues with the colostomy bag over the past decade, which had led to five additional surgeries to "remove and reinstall" it. J.A. 30. The procedure caused "new holes in his body" and "rashes, bleeding, discomfort, thickening of the skin around the bag, numerous infections . . . and the bag [being] herniated four times." *Id.* These complications also relegated Malone to pariah status around other prisoners. The bag often smelled foul and, on one occasion, blew off from its port, causing feces to spray across his room and himself. In addition to these complications, Malone endured nocturia, the removal of a mass from his left chest wall, Type II Diabetes, a disfunction in his heart ventricle, pulmonary regurgitation, "abnormal Q waves," obstructive sleep apnea, chronic rhinitis, hypertension, "hyperlipidemia," dyslipidemia, other respiratory diseases, dental decay and loss (and the prison's refusal to provide him with molds per his request), tingly legs, burning sensations, and swollen feet. J.A. 30–31.

The district court denied Malone's motion for compassionate release on July 25, 2019. The court held that Malone's alleged "extraordinary and compelling" reasons did not meet the requirements set forth in U.S.S.G. § 1B1.13. Looking to Malone's conditions,

4

the court applied two of the Application Notes from the provision's commentary: "Medical Condition of the Defendant" and "Age of the Defendant." § 1B1.13 cmt. n.1 (A–B). The court asserted that, per the provision's "helpful guidance," "[i]t does not appear that the defendant's ground for compassionate release complies with any of these categories . . . [that] qualif[y] [him] for such extraordinary relief." J.A. 44. The court denied Malone's motion, fixating only on his "series of ailments that have mostly stemmed from his colon-rectal cancer in the late 1990s and many issues stemming from the subsequent treatment." J.A. 42. The district court did not acknowledge or address Malone's additional health concerns presented in his motion.

However, in May 2020, shortly after the COVID-19 pandemic swept through the nation's prison facilities, the BOP—through the CARES Act—moved Malone to his brother's home to continue serving his sentence. Due to his severe health conditions and advanced age, the BOP considered him "highly susceptible to death or serious illness from COVID-19." J.A. 46. Although Malone had appealed the district court's previous denial of his compassionate release motion to this Court, the appeal was voluntarily dismissed in August 2020.

The following month, Malone filed a motion to order a home study for his personal residence. In the motion, Malone claimed that the BOP's decision to release him to his brother's home was an "error" and he "had to pay his brother several hundred dollars in rent each month when his own home [was] just down the street." J.A. 47. Malone requested that the district court order the probation officer to perform a home study on his house and return the study's results to the Residential Reentry Management Raleigh office,

5

the entity responsible for his home confinement.  The district court granted Malone's home study order, finding good cause.[2]

## II.

This appeal stems from Malone's second motion for compassionate release under § 3582(c)(1)(A) filed on December 8, 2020.  In his renewed request, Malone argued that there were extraordinary and compelling reasons for granting his motion and that the § 3553(a) factors weigh in favor of his release.  First, in contending that there were extraordinary and compelling reasons for his release, Malone pointed to his severe medical conditions and advanced age, which can constitute extraordinary and compelling reasons for release under § 1B1.13 cmts. n.1(B, D).  Similarly, Malone further noted that if the BOP were to reincarcerate him in a prison facility, the odds of contracting COVID-19 would be high and potentially deadly.  And because the BOP determined that his medical conditions were severe enough to place him in home confinement during the pandemic, Malone argued that the court should also find these factors relevant in its analysis of his extraordinary and compelling reasons for release.  Malone also asked the court to reconsider the "extreme length" of his sentence.  Second, Malone claimed that the relevant § 3553(a) factors weigh in favor of his release because he was not a danger to the

---

[2] Though the record does not reveal the results of the home study or the precise date Malone was moved, he was transferred to his home prior to the district court's denial of his second motion for compassionate release.

community and he had a viable continued release plan. Unlike his first motion for compassionate release, Malone now sought a reduction in sentence to time served.

The government, in opposition, asserted that Malone's heightened risk of contracting COVID-19 had been mitigated because he was no longer in a prison facility. Also, the government argued that Malone's case failed on the merits: he had not presented new extraordinary and compelling health conditions that would change the district court's first denial and the relevant § 3553(a) factors did not favor his release.

Following the government's opposition, Malone filed a Notice of Office of Legal Counsel ("OLC") letter referring to OLC's January 15, 2021 "Home Confinement of Federal Prisoners After the COVID-19 Emergency" Opinion. J.A. 95–96. In his letter, Malone highlighted the opinion's language, observing that his home confinement was not a permanent remedy. Notably, when COVID-19's "emergency period" came to an inevitable end, the opinion suggested that Malone would be required to return to prison at the BOP's discretion unless the district court granted his motion for compassionate release.

In a one-page order, the district court denied Malone's second motion for compassionate release. The order reads:

> Upon motion of the defendant for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, and for the reasons stated on behalf of the United States, it is ORDERED that the motion . . . is DENIED after complete review on the merits. The Bureau of Prisons has already released Malone to home confinement due to the Covid-19 pandemic and his medical risk factors. An investigation by a probation officer of this court revealed that Malone is no longer living with his brother but has been permitted to relocate to his own home. He has appropriate access to medical treatment, and his daily needs

> appear to be met.  Considering these facts and the § 3553(a) factors, I find that no further relief is warranted.

J.A. 97.  The district court neither acknowledged nor addressed Malone's OLC letter in its order.

After the district court's denial, Malone filed this appeal, providing two primary arguments.  First, he insisted that the district court abused its discretion in failing to account for his age and medical conditions—which alone qualify as extraordinary and compelling reasons for release—and ignored the relevant § 3553(a) factors and other significant, "non-frivolous" arguments raised.  Second, Malone argued that the district court abused its discretion in disregarding the temporary nature of his home confinement and the additional difficulties Malone faced while in home confinement, particularly his inability to qualify for government benefits.  Malone also contended that the complexity of his motion "warranted an individualized explanation" for the district court's denial.  Brief of Appellant at 8.

## III.

This Court reviews the district court's decision on a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) for an abuse of discretion.  *United States v. Jenkins*, 22 F.4th 162, 165 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021)).  A district court has "abuse[d] its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law."

*United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (quoting *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)).

IV.

In analyzing a motion for compassionate release, district courts must determine: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582. Only after this analysis may the district court grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release. *Id*.

Malone contends that he raised several arguments that qualify as extraordinary and compelling reasons for release, but the district court failed to consider or address any in its decision. Further, he asserts that the district court's order provided a "rote" statement regarding its "consideration" of the relevant § 3553(a) factors but offered no further explanation or analysis. Because the district court failed to reckon with Malone's numerous, health-related extraordinary and compelling circumstances distinct from the COVID-19 pandemic or any of the relevant § 3553(a) factors, we find that the district court abused its discretion.

A.

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, the statute carves out a few exceptions to this rule. In years past, § 3582 authorized district courts to consider compassionate release

9

motions filed only by the BOP.  18 U.S.C. § 3582(c); *High*, 997 F.3d at 185.  But Congress broadened that authority when it passed the First Step Act ("FSA") in 2018.  The FSA permits incarcerated defendants to file motions for compassionate release directly with the district court, provided they have fully exhausted their administrative remedies.  Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (codified as § 3582(c)(1)(A)).  Defendants have exhausted their administrative remedies when they "appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582.[3]

As mentioned, the district court's analysis must examine whether the defendant's request for reduction is consistent with the Sentencing Commission's applicable policy statements.  To this end, courts in this circuit once looked to Sentencing Guideline § 1B1.13 as the primary policy statement informing the district court's analysis of what circumstances merit extraordinary and compelling reasons for compassionate release.  That provision's commentary provides explicit Application Notes with "criteria . . . and a list of

---

[3] In its response to Malone's second motion for compassionate release, the government argued that Malone had failed to exhaust his administrative remedies because he "offer[ed] no evidence of [his submitted request for home confinement to the head of the facility overseeing his confinement] and BOP ha[d] no record of such a request."  J.A. 80.  As we noted in *United States v. Kibble*, "[c]ourts are split over the question of whether, and under what circumstances, a court may waive § 3582(c)(1)(A)'s exhaustion requirement."  992 F.3d 326, 330 n.2 (4th Cir. 2021).  However, the district court did not opine on the exhaustion issue in its decision and the government failed to raise this argument on appeal.  Because the government did not preserve its exhaustion argument here, the issue is waived.  *See United States v. Cone*, 714 F.3d 197, 216 (4th Cir. 2013) (quoting *United States v. Strieper*, 666 F.3d 288, 293 n.4 (4th Cir. 2012) ("This argument did not appear in [party's] brief, and as such, it is waived.")).

10

specific examples," *High*, 997 F.3d at 186, including the "medical condition of the defendant," "age of the defendant," "family circumstances," and a final catchall "other reasons" criterion. § 1B1.13 cmt. n.1(A–D).

Recently, however, we joined our sister circuits in determining that *no* applicable policy statement currently exists for *defendant*-filed § 3582(c)(1)(A) motions for compassionate release. *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *see also United States v. Brooker*, 976 F.3d 228, 235–36 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Because the Sentencing Commission adopted § 1B1.13 prior to the FSA, it did not account for motions filed by defendants, and now *solely* applies to motions filed by the BOP. *See United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (citing *McCoy*, 981 F.3d at 281–82). Though the outdated policy remains helpful guidance, a district court must not entirely rely upon § 1B1.13 when considering a defendant's motion for compassionate release. *See id.* at 330–31 (holding that the district court erred in deeming § 1B1.13 "applicable" to defendant-filed motion for compassionate release). Ultimately, district courts are encouraged to "consider *any* extraordinary and compelling reason[s] for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (quoting *Brooker*, 976 F.3d at 230) (emphasis in original).

Proceeding to the final step, if the district court has determined that the defendant's § 3582(c)(1)(A) motion has demonstrated extraordinary and compelling reasons for release, it must then turn to the relevant sentencing factors set forth in § 3553(a) "to the

11

extent . . . they are applicable." § 3582(c)(1)(A).   Only after considering those factors should the district court determine whether to grant compassionate release.

B.

First, we conclude that, due to the overwhelming evidence presented in the record, the district court did not conduct a reasoned analysis of Malone's proffered extraordinary and compelling reasons for release.  The only indication of this review is found within the district court's denial of Malone's first § 3582(c)(1)(A) motion for compassionate release.  Yet, that analysis was defective.  In denying that motion, the district court recognized § 1B1.13's inapplicability but failed to step outside the policy statement's four corners.  Notably, it appears on face value that in its denial of Malone's second motion, the district court relied on its previous decision denying Malone's first motion.  But because the analysis there was flawed it follows that the analysis in the second suffers from the same deficiency.  As a result, the district court did not present a sufficient or accurate legal framework when it rejected Malone's extraordinary and compelling reasons unrelated to COVID-19.

Although the district court's denial of Malone's first motion is not at issue here, we must review that decision in order to determine whether the court adequately considered Malone's second motion.  The court's decision primarily rested on Malone's "series of ailments that . . . mostly stemmed from his colon-rectal cancer . . . and many issues stemming from the subsequent treatment." J.A. 42.  It simply applied § 1B1.13's "Medical Condition" and "Age" provisions and concluded: "[i]t does not appear that the defendant's ground for compassionate release complies with any of these categories.  Even considering

12

them merely as 'helpful guidance on the factors that support compassionate release,' I do not find that Malone is qualified for such extraordinary relief." J.A. 44 (internal citations omitted).

We disagree. Malone's numerous health conditions undoubtedly establish extraordinary and compelling reasons for release. To start, even if the district court was bound by the § 1B1.13 factors (which it was not), Malone's circumstances would qualify as extraordinary and compelling. Under § 1B1.13's "Age" provision, a defendant must show that he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13 cmt. n.1(B). Malone's deteriorating health and advanced age fit squarely within this provision. When Malone filed his first motion for compassionate release, he was sixty-eight years old, struggled with countless physical health ailments related to the aging process (colon-rectal cancer and a permanent colostomy bag, Type II diabetes, morbid obesity, hypertension and hyperlipidemia (both of which required medications), cystic kidney and liver disease), and had served approximately eleven years of his prison sentence.

Looking beyond the § 1B1.13 factors, the fact that the BOP determined Malone was at severe risk of contracting COVID-19, due to his health and advanced age if he remained in the prison facility, "bears weight in the Court's analysis." *United States v. Gamboa*, 467 F. Supp. 3d 1092, 1101–02 (D.N.M. 2020) (holding that, though the BOP's determination that defendant suffered from severe medical factors did not—on its own—establish eligibility for compassionate release, it was a relevant factor in the court's analysis). The

13

district court also neglected this argument.  While district courts are given "broad discretion in conducting . . . § 3582(c)(1)(A) analys[es]," *Jenkins*, 22 F.4th at 169, that discretion does not permit dismissing a defendant's clearly severe and deteriorating conditions.

The district court again discounted Malone's various health conditions in denying his second motion.  There, the court stated that per the home study's order and Malone's relocation to his own residence, "[h]e has appropriate access to medical treatment, and his daily needs appear to be met." J.A. 97.  No further explanation was offered, and the court did not consider any of the additional extraordinary and compelling reasons for release Malone presented.  The government contends that the district court's order was sufficient as it addressed the home study's findings and adopted the arguments stated in the government's opposition brief.  We reject that proposition.  Where a district court relies entirely on an inapplicable policy statement and fails to provide any further consideration of the extraordinary and compelling reasons presented, this Court must find an abuse of discretion.  The district court's first and second denials reveal its failure to consider Malone's worsening health.  Further, the home study performed provided only a snapshot in time and did not account for Malone's steady decline.  Oral Argument at 1:07:59–08:38.  In its denial of Malone's second motion, the court seemingly ran with this point in time and failed to engage with Malone's additional grave ailments that had developed since sentencing.  Even so, we will not opine on the government's argument regarding the procedural adequacy of the district court's decision because our decision stems from the district court's narrow view of the record's striking facts.  To be clear, our concern is rooted

14

in Malone's substantive grounds for release. In fact, the procedural arguments wane in comparison.

Thus, we find that Malone's severe and numerous debilitative medical conditions and advanced age establish extraordinary and compelling reasons for release under § 3582(c)(1)(A).

C.

We now turn to whether the district court abused its discretion in failing to analyze and reweigh the relevant § 3553(a) factors, as they applied to Malone. As we stated above, a district court may not grant a defendant's request for sentence reduction under § 3582(c)(1)(A) without considering "the factors set forth in § 3553(a) to the extent that they are applicable." *Kibble*, 992 F.3d at 331.

The district court gave the § 3553(a) factors cursory treatment stating: "Considering these facts and the § 3553(a) factors . . . no further relief is warranted." J.A. 97. The government insists that the court's reasoning—though terse—was "appropriately tailored to the simplicity of the case, and it shows the court sufficiently considered Malone's arguments and had a reasoned basis for denying the motion." Brief of Appellee at 21. We find this argument unpersuasive and the district court's reasoning both inadequate and at odds with the record.

District courts must consider the following relevant § 3553(a) factors as they pertain to the defendant: "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence imposed to "provide just punishment," "afford adequate

15

deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." *High*, 997 F.3d at 186 (quoting 18 U.S.C. § 3553(a)).

As an initial matter, a district court does not have the duty to provide an in-depth explanation for each § 3553(a) factor. *See Jenkins*, 22 F.4th at 170. However, "the record as a whole [must] satisf[y] [this Court] that the judge 'considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1967 (2018) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). Naturally, we turn to the district court's most recent explicit consideration of the relevant § 3553(a) factors: Malone's 2008 sentencing hearing. The hearing transcript reveals that the district court provided the following scant § 3553(a) analysis: "I believe that a sentence within the guideline range was appropriate in this case, in view of the harm and potential for harm that a drug trafficking conspiracy such as that which Mr. Malone led causes to the community." Transcript of Sentencing at 12, *United States v. Malone*, No. 1:07CR37 (W.D.V.A. May 19, 2008), ECF No. 119.

Yet, since then, the balance of Malone's relevant § 3553(a) factors has shifted, and we find that his sentence is no longer just. First, though Malone was sentenced within the applicable guidelines range and the court then believed his sentence necessary for community protection, Malone's severely degenerated health and advanced age provide strong grounds for reweighing the relevant sentencing factors. Because "[m]otions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other," *United*

16

*States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022), a district court's task is to determine whether these relevant § 3553(a) factors weigh against sentence reduction in light of *new* extraordinary and compelling reasons. *Kibble*, 992 F.3d at 334 (Gregory, C.J. concurring) (emphasis added). Since his sentencing, Malone wrote to the court on at least three separate occasions detailing his failing health and requesting reconsideration of the relevant § 3553(a) sentencing factors. *See* J.A. 29–39, 51–70; *see also* Request for Reduction in Sentence Under 18 U.S.C. § 3582(c)(2) and Pursuant to Amendment 782 to the U.S.S.G. at 5–6, *United States v. Malone*, No. 07-CR-000037-001 (W.D.V.A. Nov. 25, 2014), ECF No. 259. At each point, the district court neither acknowledged nor reweighed the applicable § 3553(a) factors related to Malone's health circumstances at the respective times of these filings.

Next, Malone's "new" extraordinary and compelling circumstances inhibit him from being a danger to the community. For one, Malone was moved to minimal security while in prison, demonstrating that he posed no threat while incarcerated. Even more, since the BOP transferred Malone from his prison facility to home confinement during the pandemic's emergency period, this "indicates [the BOP's] assessment that [Malone] is not a danger to the community." *United States v. Calhoun*, 539 F. Supp. 3d 613, 617 (S.D. Miss. 2021) (BOP's determination that defendant was a "good candidate" for home confinement demonstrated he was not a danger to the community); *see also* Order, *United States v. Privette*, No. 7:07-CR-133-BO (E.D.N.C. Oct. 9, 2019), ECF No. 130 (granting defendant's motion for compassionate release because multiple health-related ailments satisfied § 1B1.13 cmt. n.1(B) and the BOP's determination that defendant was eligible for

17

home confinement demonstrated that the BOP did not consider him a danger to the community). Thus, if the district court was determined to keep Malone on home confinement for the five years remaining on his sentence, it would "not meaningfully advance the purposes of sentencing." *Gamboa*, 467 F. Supp. 3d at 1102.

We conclude that the district court abused its discretion by failing to recognize that the relevant § 3553(a) factors clearly favor release. Having a Category I criminal history,[4] Malone acknowledged the seriousness of his offense in prior motions to the court and has now served over fourteen years of his sentence. While in prison, he participated in multiple classes and was also placed in a low-level prison camp. His new extraordinary and compelling health-related circumstances have condemned him to a life filled with limitations. Due to these circumstances, his potential for recidivism is low to none and he does not pose a threat to others or the community at large. To affirm the district court's denial would not only be a great disservice to Malone, but to any defendant with failing health seeking autonomy in their twilight. There is a reason this is called *compassionate* release, after all.

In sum, the district court's § 3553(a) reasoning was a "rote" statement lacking the necessary rebalancing regarding Malone's conditions *at the time his motion was filed*. Ordinarily, we understand that district courts wield broad discretion in deciding compassionate release motions. However, in cases—as in here—where the record presents such extraordinary conditions that are undisputedly severe and permanent, we are

---

[4] A Category I Criminal History is the lowest classification of criminal history points indicated on the United States Sentencing Table.

compelled to conclude that such dire circumstances warrant an exceptional case for compassionate release.[5]

V.

The district court abused its discretion in denying Malone's § 3582(c)(1)(A) compassionate release motion. Accordingly, we reverse and remand with instructions to grant Malone's motion for compassionate release.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

[5] *See United States v. Johnson*, No. 3:02-CR-00015, 2022 WL 3039758, *2–4 (W.D.V.A. Aug. 1, 2022) (granting defendant's motion for compassionate release due to his age, serious deterioration in physical health, threat of COVID-19, and application of relevant § 3553(a) factors).

PAMELA HARRIS, Circuit Judge, concurring in part:

I wholly concur in the majority's determination that the district court abused its discretion when it denied Lonnie Malone's motion for compassionate release, failing to adequately consider the existence of extraordinary and compelling reasons for release under § 3582(c)(1)(A) and the application of the § 3553(a) sentencing factors to Malone's current and very unfortunate circumstances. I also agree with the majority that given Malone's age and severe health conditions, the record provides strong support for a grant of compassionate release, notwithstanding the fact that Malone is currently on home confinement.

That leaves only the question of remedy. The grant or denial of a motion for compassionate release is a matter of district court discretion, *see United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021), and I would do as Malone asks in his brief on appeal, vacating the order and remanding so that the district court may reconsider its denial of relief with the benefit of the critical guidance provided by today's opinion. There may be cases where, in the end, no analysis or explanation could persuade us that compassionate relief was appropriately denied. But before we put this case into that category, I would allow the district court to consider the full record under the proper framework, as laid out in the majority's fine opinion.

20