# United States Court of Appeals
## For the First Circuit

No. 22-1643

UNITED STATES OF AMERICA,

Appellee,

v.

EDGARDO QUIRÓS-MORALES, a/k/a Sealed Defendant 8, a/k/a Quirito,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Montecalvo, Selya, and Lynch,
Circuit Judges.

Marie Killmond, with whom Amelia T.R. Starr, Sharon Katz, Kennedi Williams-Libert, and Davis Polk & Wardwell LLP were on brief, for appellant.
Sofia M. Vickery, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, were on brief, for appellee.

October 4, 2023

**SELYA**, <u>Circuit Judge</u>.  As the name implies, courts of appeals are courts of review.  A judicial system — like the federal judicial system — functions best when the constituent courts within that system stay in their own lanes.  So when a factbound determination is committed to the discretion of the district court, the court of appeals ordinarily should stay its hand and refrain from making that determination in the first instance.  Rather, the court of appeals should allow the district court to exercise its discretion and then review the resulting determination.  Consonant with this framework, we vacate the district court's denial of a prisoner-initiated motion for compassionate release filed by Edgardo Quirós-Morales (Quirós) but deny Quirós's request that we jump the line and order his compassionate release.  We remand the matter to the district court for further proceedings consistent with this opinion.

## I

We briefly rehearse the relevant facts and travel of the case.

## A

Quirós was a member of a gang involved in the distribution and sale of a broad array of drugs.  On April 10, 1997, Quirós was indicted, along with several co-defendants, on a charge of conspiracy to distribute five kilograms or more of heroin, cocaine, and cocaine base and 100 kilograms or more of

marijuana.  See 21 U.S.C. §§ 841(a)(1), 846.  On July 15, 1998, a jury found Quirós guilty as charged.

The district court (Casellas, J.) convened the disposition hearing on December 11, 1998.  According to the factual recitals in the presentence investigation report (PSI Report), which the district court adopted for purposes of the hearing, Quirós served as a "triggerman" for the drug-trafficking gang.  In that capacity, he used firearms "to provide protection to the leaders of the organization . . . and to engage in shootings against members of rival drug-trafficking organizations pursuant to the instructions of the leaders."  The PSI Report described two murders that took place in furtherance of the conspiracy, but Quirós was not among the individuals listed as participating in the commission of either murder.

The sentencing guidelines then in effect contained a cross reference instructing that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111," the first-degree-murder guideline should apply.  USSG §2D1.1(d)(1) (Nov. 1998).  Employing this cross-reference, the PSI Report calculated a base offense level of 43.  This calculation, coupled with a criminal history category of I, yielded a guideline sentencing range of life imprisonment.  The district court accepted these guideline calculations and sentenced Quirós — who was then twenty-four years of age — to a term of life imprisonment.  We

affirmed Quirós's conviction and sentence, noting that "a life sentence was mandated" by the applicable sentencing guidelines. United States v. Quirós Morales, No. 99-1115, slip op. at 13 (1st Cir. Feb. 9, 2001) (unpublished opinion).

**B**

Over time, Quirós made numerous attempts to obtain post-conviction relief. We offer a representative sampling of those attempts.

- In 2002, Quirós moved pro se for post-conviction relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel and arguing in part that the sentencing court's application of the section 2D1.1(d)(1) murder cross-reference violated Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). The district court denied the section 2255 motion in an unpublished decision, concluding (among other things) that the Apprendi rationale did not apply because "the statute under which [Quirós] was convicted [already] exposed him to life imprisonment." See Quirós-Morales v.

United States, No. 02-2019, 2004 WL 7344743, at *2 (D.P.R. May 24, 2004).

- Following the Supreme Court's watershed decision in United States v. Booker, 543 U.S. 220, 245 (2005), Quirós petitioned for a certificate of appealability, see 28 U.S.C. § 2253(c), based in part on the contention that his sentence violated both Apprendi and Booker. We denied his petition in an unpublished judgment, noting that even if Booker applied retroactively, "there is no reasonable indication that Quirós would have received a lesser sentence in a post-Booker regime of advisory guidelines."

- Six years later, Quirós sought leave to file a successive motion to vacate, set aside, or correct his sentence. See 28 U.S.C. § 2255. This time, Quirós grounded his motion on "newly discovered evidence." That evidence consisted of an affidavit from Daisy Trevino Ortiz, who had been convicted of shooting a woman named Marlena Gotay. Quirós alleged that the affidavit contradicted trial testimony indicating both that he was involved in Gotay's murder and that the murder was related to

drug trafficking.  We denied Quirós's motion in an unpublished judgment.

## C

In 2018, Congress passed the First Step Act (FSA), which amended the compassionate-release statute, see 18 U.S.C. § 3582(c)(1)(A), to allow prisoners to file their own motions for compassionate release, see FSA § 603(b), 132 Stat. at 5239.  On April 5, 2021, Quirós — through counsel — moved for compassionate release or, in the alternative, a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]  Quirós argued that various factors supported his motion for compassionate release, including his youth and lack of criminal history at the time of the offense of conviction, the disparity between his sentence and those of similarly situated co-defendants, the lack of danger that he posed to the community, the fact that under current law he would not be subject to an automatic life sentence for the same crime, the absence of any factual basis for the section 2D1.1 murder cross-reference, his rehabilitation and strong support network, and his risk of contracting COVID-19 while incarcerated.  The government opposed the motion.

---

[1] Although Quirós describes his requested relief as "a sentence reduction or compassionate release," we have referred interchangeably to such motions as "compassionate-release" and "sentence-reduction" motions.  See United States v. Saccoccia, 10 F.4th 1, 3 n.2 (1st Cir. 2021).

- 7 -

Because the original sentencing judge had died, Quirós's motion was referred to a different trier. The district court (Domínguez, J.) proceeded to deny Quirós's motion. The court stated in an electronic order that "[Quirós] has failed to demonstrate that he suffers from a serious medical condition that would constitute an extraordinary and compelling reason for his release. Without that showing, [Quirós's] request cannot proceed as a matter of law." The court further stated that "[i]n any event, the seriousness of the offense makes him illegible [sic] for compassionate release as this case relates to drug conspiracy and a related death by cross murder reference."

This timely appeal ensued.

## II

Shortly before the district court ruled, the legal landscape relating to compassionate release became better defined: this court decided United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022). Of particular pertinence for present purposes, Ruvalcaba held that because the Sentencing Commission had not yet issued any policy statement applicable to prisoner-initiated motions for compassionate release, district courts reviewing such motions had discretion to "consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief," including non-retroactive changes to the law. Id. at 28. But briefing on Quirós's compassionate-

- 8 -

release motion had already been completed, and neither party called the Ruvalcaba decision to the district court's attention.

The district court denied the motion for compassionate release. Hot on the heels of its order, we decided United States v. Trenkler, 47 F.4th 42 (1st Cir. 2022). There, we fleshed out our holding in Ruvalcaba and made pellucid that district courts "may conduct a holistic review to determine whether the [prisoner's] individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release." Id. at 47 (quoting Ruvalcaba, 26 F.4th at 27). We added that the types of appropriate circumstances for district courts to consider may include alleged sentencing errors, although "classic post-conviction arguments, without more," generally will not succeed in this inquiry. Id. at 48.

Another relevant decision, United States v. Gonzalez, 68 F.4th 699 (1st Cir. 2023), came down after Trenkler. In that decision, we further elaborated on the scope of the holistic review permitted by Ruvalcaba and Trenkler, explaining that the district court need not consider every potential configuration of grounds for compassionate release but, rather, its analysis "should be shaped by the arguments advanced by defendants." Id. at 706.

## III

On appeal, Quirós argues that the district court's denial of his compassionate-release motion flouted the teachings

of Ruvalcaba and Trenkler.  The government does not put up a fight.
Acknowledging that it is at least unclear whether the district
court employed the appropriate legal standard for assessing
whether a prisoner has presented extraordinary and compelling
reasons for compassionate release, the government has conceded
that the order appealed from should be vacated.

But that is not the end of the matter.  While the
government seeks to have us remand the compassionate-release
motion for further consideration by the district court, Quirós
does not want to settle for half a loaf.  Instead, he entreats us
either to grant outright the motion for compassionate release or
to instruct the district court, on remand, to grant it.[2]

**A**

Before we turn to Quirós's entreaty, some background is
useful.  "Th[e] compassionate-release statute carved out a narrow
exception to the general rule that '[a] court may not modify a
term of imprisonment once it has been imposed.'"  United States v.
Saccoccia, 10 F.4th 1, 3 (1st Cir. 2021) (quoting 18 U.S.C.
§ 3582(c)).  The statute allows a district court to reduce a term
of imprisonment when extraordinary and compelling reasons warrant
a sentence reduction, such a reduction is consistent with any

---

[2] These are two ways of saying the same thing and — for
simplicity's sake — we will treat his prayer as a prayer to have
this court order compassionate release.

- 10 -

applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction. See 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Texeira-Nieves, 23 F.4th 48, 52 (1st Cir. 2022).[3] Whether a defendant's circumstances are "extraordinary and compelling" is "guided by the plain meaning of those terms," United States v. Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021), and is subject to relevant legal constraints.

Before proceeding further, we note two preliminary matters. First, a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request. See 18 U.S.C. § 3582(c)(1)(A). The government does not gainsay that Quirós has satisfied this requirement.

Second, we note that there is no applicable policy statement currently in effect with respect to a prisoner-initiated motion for compassionate release. See Ruvalcaba, 26 F.4th at 23. On April 27, 2023, however, the Sentencing Commission submitted to

---

[3] The compassionate-release statute also allows a district court to reduce a term of imprisonment in two other circumstances. See 18 U.S.C. § 3582(c)(1)(A)(ii), (c)(2). Those provisions are not implicated in this appeal.

- 11 -

Congress proposed amendments to its current policy statement on compassionate-release motions, which would both extend the applicability of its policy statement to prisoner-initiated motions and expand the scope of what can be considered an extraordinary and compelling reason warranting a sentence reduction. See United States v. Rivera-Rodríguez, 75 F.4th 1, 18 n.22 (1st Cir. 2023) (referencing proposed amendments). These proposed amendments will not become effective unless and until Congress declines to disapprove, revise, or otherwise modify them within 180 days from the date of their submission. See 28 U.S.C. § 994(p).

We "review a district court's denial of a compassionate-release motion for abuse of discretion." Saccoccia, 10 F.4th at 4. Under this standard, "we review the district court's answers to legal questions de novo, factual findings for clear error, and judgment calls with some deference to the district court's exercise of its discretion." Id. at 5 (quoting Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 92 (1st Cir. 2020)).

**B**

Before turning to the beating heart of the appeal — the remedy to which Quirós is entitled — we pause to make brief mention of the legal error in the district court's order. Most importantly, the district court erred in determining that Quirós's motion had to be denied "as a matter of law" because of his failure

- 12 -

"to demonstrate that he suffers from a serious medical condition." (Emphasis supplied). As we held in Ruvalcaba and elaborated in Gonzalez, "any complex of circumstances" identified by a prisoner, subject to whatever constraints have been imposed by Congress or the courts, may be considered by the district court as a basis for compassionate release. Gonzalez, 68 F.4th at 706; Ruvalcaba, 26 F.4th at 28. "[T]he only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation." Trenkler, 47 F.4th at 47 & n.11 (footnote omitted); see 28 U.S.C. § 994(t). In view of these authorities, it is apparent that the district court prematurely concluded that Quirós's compassionate-release motion could not proceed as a matter of law.

Because "[a] district court by definition abuses its discretion when it makes an error of law," Koon v. United States, 518 U.S. 81, 100 (1996), we agree with the parties that the decision below cannot stand.[4] We must, therefore, vacate the challenged order.

---

[4] Quirós argues that the district court made a second legal error by stating that "[i]n any event, the seriousness of [Quirós's] offense makes him illegible [sic] for compassionate release as this case relates to drug conspiracy and a related death by cross murder reference." To the extent that this statement could be read to imply that Quirós's particular crime of conviction poses a categorical bar to compassionate release, we agree with Quirós that no such categorical bar currently exists. Reading the statement in context, though, it is unclear whether the district court intended to assert such a categorical bar or merely meant to

Quirós insists that we should go the extra mile and grant his motion for compassionate release. We think not. As we explain below, the district court, not this court, is the appropriate forum for consideration of such a first-instance determination.

The district court enjoys a "wide compass" of discretion when deciding whether to grant or deny a motion for compassionate release. Canales-Ramos, 19 F.4th at 567 (describing district court's decision to deny compassionate release as "a judgment call"); see Texeira-Nieves, 23 F.4th at 57 (affording deference to denial of compassionate-release motion when "district court weigh[ed] the relevant considerations and ma[de] a reasonable judgment call"). We believe that it would be both unbecoming and contrary to the basic principles of appellate review for us to usurp the district court's prerogative, decide the motion without the benefit of the district court's insights, and simply substitute our judgment for that of the district court. Where, as here, a district court must formulate a sentencing decision that requires it to "make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience

_____

invoke the seriousness of Quirós's conviction as weighing against compassionate release on these specific facts. Certainly, the gravity of the underlying offense is relevant to a judge's consideration when deciding a compassionate-release motion. See, e.g., Saccoccia, 10 F.4th at 9.

in criminal sentencing," it has "an institutional advantage" that an appellate court cannot match.[5] <u>Koon</u>, 518 U.S. at 98; <u>see</u> <u>United States</u> v. <u>Cruzado-Laureano</u>, 404 F.3d 470, 489 (1st Cir. 2005) (explaining that for an appellate court to "do[] the sentencing" in lieu of a district court would not be "an appropriate allocation of functions").

In an effort to blunt the force of this reasoning, Quirós argues that "[t]his is a case where the District Court simply applied the governing standard incorrectly" so that "remand to the District Court with instructions to apply that standard again" would be unlikely to "yield a different result." This argument fails on at least two levels. For one thing, the record before us is much more tenebrous than Quirós suggests: for aught that appears, the district court did not apply the correct standard at all — and the better practice is to afford it the opportunity to do so in the first instance. For another thing, even if the district court had misapplied the correct legal standard, an open-ended remand would be the preferable course. After all, the allocation of functions between trial and appellate courts strongly suggests that the district court ought to be afforded the

_____

[5] To be sure, there may be unusual circumstances in which this general rule would not apply. This case, however, fits comfortably within the general rule, not within the long-odds exception to it.

opportunity to apply that standard in the first instance, armed with a clearer understanding of its proper application.

Quirós undervalues both the district court's institutional competence and the desirability of allowing the district court to make a first-instance determination. In staking out his position, he relies heavily on the decision in United States v. Malone, 57 F.4th 167 (4th Cir. 2023). There, a divided panel of the Fourth Circuit eschewed any need to obtain the district court's views and directed the district court to grant the appellant's motion for compassionate release. See id. at 178. In that case, however, the appellant's compassionate-release motion was especially urgent because of his advanced age and grave health conditions. See id. at 169. What is more, the appellant had already been placed in temporary home confinement due to his special susceptibility to death or serious illness from COVID-19, and he made a persuasive case that he was unable to receive government benefits (such as Medicaid) while in temporary home confinement. See id. at 172. To add a further complication, his health was in steep decline. See id. at 170-72. Recognizing these "dire circumstances," the majority reversed the denial of compassionate release and remanded with instructions to grant the compassionate-release motion.[6]  Id. at 177-78.

---

[6] Through a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), Quirós has also called our attention to

In our view, the <u>Malone</u> decision is a product of unique circumstances, and Quirós's case is at a far remove from it. Quirós is in his late forties and appears to be in stable health. Unlike in <u>Malone</u>, Quirós has neither presented a near-conclusive case for compassionate release nor made a convincing showing of special urgency, counselling in favor of immediate action.

Here, Quirós's arguments for compassionate release are multilayered and require careful parsing of the record. Moreover, the district court never undertook an evaluation of the 18 U.S.C. § 3553(a) factors. Such an evaluation is an important component of the compassionate-release process, and the district court is better positioned than this court to perform that evaluation.

To write at greater length would be to paint the lily. What Judge Harris wrote in <u>Malone</u> fits this case like a glove: "There may be cases where, in the end, no analysis or explanation could persuade us that compassionate relief was appropriately denied. But before we put this case into that category, [we should] allow the district court to consider the full record under the proper framework." <u>Malone</u>, 57 F.4th at 178 (Harris, J., concurring in part).

the Fourth Circuit's later decision in <u>United States</u> v. <u>Brown</u>, 78 F.4th 122 (4th Cir. 2023). The majority opinion in <u>Brown</u> is of a piece with the majority opinion in <u>Malone</u>, <u>see</u> <u>id.</u> at 134 (Quattlebaum, J., dissenting) (accusing majority of "usurp[ing] the district court's assigned responsibility"), and does not require any additional analysis.

## IV

We need go no further.  For the reasons elucidated above, the district court's order denying the motion for compassionate release is <u>vacated</u> and the matter is <u>remanded</u> to the district court for further proceedings consistent with this opinion.

**<u>Vacated and Remanded</u>**.