# United States Court of Appeals
## For the First Circuit

No. 23-1610

UNITED STATES,

Appellee,

v.

JOSÉ M. CEBALLOS, t/n José M. Guzmán-Ceballos,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. District Judge]

Before

Gelpí, Thompson, and Aframe,
Circuit Judges.

MariaCarolina Gomez Gonzalez, Assistant Federal Public
Defender, with whom Rachel Brill, Federal Public Defender, and
Franco L. Pérez-Redondo, Assistant Federal Public Defender,
Supervisor, Appellate Unit, were on brief, for appellant.

Maarja Tiganik Luhtaru, Assistant United States Attorney,
with whom W. Stephen Muldrow, United States Attorney, and Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

June 18, 2025

**GELPÍ, Circuit Judge.** Defendant-Appellant José Miguel Guzmán-Ceballos ("Guzmán-Ceballos")[1] was sentenced to ninety months' imprisonment for his role in transporting 385 kilograms of cocaine from the Dominican Republic to Puerto Rico. Guzmán-Ceballos pleaded guilty to all counts without a plea agreement but argued for a mitigating role adjustment under § 3B1.2 of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), which the district court denied. Before us, Guzmán-Ceballos challenges the procedural reasonableness of his sentence, arguing that the district court failed to engage in the appropriate legal analysis in denying him a mitigating role adjustment under U.S.S.G. § 3B1.2. We agree and, accordingly, remand for resentencing.

## I. BACKGROUND

Because Guzmán-Ceballos pleaded guilty to all counts, we draw the relevant facts from the undisputed sections of the presentence report ("PSR"), the transcripts from the change-of-plea and sentencing hearings, and the sentencing record. See United States v. De La Cruz, 91 F.4th 550, 551 (1st Cir. 2024). As we have done in the past, "[w]e confine our discussion of the facts to those necessary to frame the issues on appeal," which

---

[1] During the change-of-plea hearing held on March 21, 2023, Defendant-Appellant stated his full name as José Miguel Guzmán-Ceballos. We refer to him by his stated last name.

- 2 -

stem from Guzmán-Ceballos's participation in a drug-smuggling venture from the Dominican Republic to Puerto Rico. United States v. Hernandez-Maldonado, 793 F.3d 223, 225 (1st Cir. 2015).

## A. The Voyage

On April 17, 2021, a United States reconnaissance plane detected an unidentified boat approximately eighty-eight nautical miles off the coast of Aguadilla, Puerto Rico. The U.S. Coast Guard ("Coast Guard"), in due course, deployed a ship and a helicopter to intercept the vessel. The Coast Guard's helicopter opened fire after the boat failed to stop, causing it to halt. As the Coast Guard engaged the crew, an unidentified occupant jettisoned numerous "bales" from the boat, which the Coast Guard later recovered from the ocean.

The Coast Guard then approached and boarded the boat. Coast Guard officers identified three people onboard: Guzmán-Ceballos, Juan José Lantigua ("Lantigua"), and Dominga Tavera ("Tavera"). Guzmán-Ceballos and Tavera made verbal claims of Dominican Republic nationality for themselves and the boat. In total, the vessel was carrying eighteen bales containing 385 kilograms (net weight) of cocaine. After securing the narcotics, the Coast Guard arrested the individuals before transferring them to the custody of the Drug Enforcement Administration.

Guzmán-Ceballos later revealed the circumstances that led him to participate in the voyage. According to

- 3 -

Guzmán-Ceballos, he worked as a fisherman until the COVID-19 pandemic disrupted the Dominican economy. Without consistent income from fishing, Guzmán-Ceballos struggled to provide for this family. Around that time, Lantigua recruited Guzmán-Ceballos to help smuggle drugs into Puerto Rico. Guzmán-Ceballos claims that he did not have any relationship with the buyer or seller of the drugs, did not know the source or destination of the same, and did not plan nor organize the voyage. Rather, he was provided a vessel with the drugs already loaded and told approximately when to leave and where to go. In addition to the three people on the boat, Guzmán-Ceballos claimed that there were "at least six others at the beach" from where the boat departed.

## B. Pre-Sentencing Proceedings

All three boat occupants were indicted in the District of Puerto Rico. Guzmán-Ceballos, specifically, was charged with five counts: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine aboard a vessel in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (Count I); (2) possession with intent to distribute five kilograms or more of cocaine aboard a vessel in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2 (Count II); (3) conspiracy to import five kilograms or more of cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960(a) and (b)(1)(B), and 963 (Count III); (4) jettisoning cocaine from a vessel in violation of 46 U.S.C. § 70503(a)(2) and 18 U.S.C.

§ 2 (Count IV); and (5) failure to heave in violation of 18 U.S.C. § 2237 (Count V).

The district court held a change-of-plea hearing on March 21, 2023. During that hearing, Guzmán-Ceballos pleaded guilty to all counts without a plea agreement. The district court then scheduled sentencing for June 20, 2023.

Before sentencing, the U.S. Probation Office ("Probation") filed the PSR. Probation did not consider whether Guzmán-Ceballos warranted any sentencing adjustments for his role in the offense. However, Probation recommended that Guzmán-Ceballos's base offense level be decreased by three points for accepting responsibility for the offense and assisting authorities with the investigation. Taking that adjustment into account, Probation calculated a total offense level of 33. Guzmán-Ceballos objected to the PSR, arguing that Probation failed to apply the mitigating role adjustment under U.S.S.G. § 3B1.2.

### C. Sentencing Hearing

At his sentencing hearing, Guzmán-Ceballos highlighted his objections to the PSR and argued for application of the mitigating role adjustment under U.S.S.G. § 3B1.2. After considering arguments from the parties, the district court rejected Guzmán-Ceballos's objections and adopted Probation's recommendations in the PSR. While the district court did not offer any additional reasons for denying Guzmán-Ceballos's objections to

the PSR, it stated that it would vary below the Guidelines range based on "the [18 U.S.C. §] 3553(a) factors, [his] special characteristics, [his] role in the offense, the nature of the offense and all that." Accordingly, the district court determined a total offense level of 31 and a criminal history category of I. That calculation yielded a sentencing range of 108 to 135 months' imprisonment. The district court ultimately sentenced Guzmán-Ceballos to ninety months' imprisonment for Counts I through IV and sixty months' imprisonment for Count V to be served concurrently. Guzmán-Ceballos objected to the sentence before the conclusion of the hearing, arguing once again that the district court should have granted his objection to the PSR and, for that reason, the sentence imposed was "unreasonably high." The district court "[d]uly noted" his objection before concluding the sentencing hearing.

Guzmán-Ceballos timely appealed.

## II. DISCUSSION

Guzmán-Ceballos argues on appeal that the district court erred in denying him a mitigating role adjustment under U.S.S.G. § 3B1.2. In particular, Guzmán-Ceballos asserts that the district court failed to conduct the necessary analysis before denying his request -- namely, that it did not identify the universe of participants in the offense and, subsequently, did not determine Guzmán-Ceballos's culpability relative to the other participants.

Failure to do so, Guzmán-Ceballos contends, constitutes reversible legal error.[2]

## A. Standard of Review

We begin by determining the proper standard of appellate review. This court reviews preserved procedural sentencing challenges for abuse of discretion. United States v. Bishoff, 58 F.4th 18, 23 (1st Cir. 2023). Under the multilayered abuse of discretion standard, we review the district court's findings of fact for clear error and afford de novo review to claims regarding the district court's interpretation and application of the Guidelines. See United States v. Sierra-Jiménez, 93 F.4th 565, 569 (1st Cir. 2024).

The government argues that Guzmán-Ceballos failed to preserve his procedural argument because his objections below were too general. Not so. "To preserve a claim of procedural sentencing error for appellate review, a defendant's objection need not be framed with exquisite precision." United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020). Instead, "[i]t

_____

[2] Guzmán-Ceballos further asks us to remand for plenary resentencing consistent with Amendment 821, Part B to the Guidelines, noting that such amendment could reduce his advisory Guidelines range. See U.S.S.G. Supp. App. C, Amend. 821, pt. B (2023). We decline to consider this request, opting to leave it to the district court to decide on remand whether the amendment applies to Guzmán-Ceballos. See United States v. Guía-Sendeme, 134 F.4th 611, 616 n.3 (1st Cir. 2025) (declining to consider an identical request and, instead, leaving it to the district court to consider whether the amendment applies on remand).

is enough if the objection is 'sufficiently specific to call the district court's attention to the asserted error.'" Id. (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)).

During the sentencing hearing, Guzmán-Ceballos argued for the application of the mitigating role adjustment under U.S.S.G. § 3B1.2. He renewed his objection after the district court rendered its sentence and stated his belief that his sentence was "unreasonably high" and that the district court should have granted his objection to the PSR requesting a mitigating role adjustment under U.S.S.G. § 3B1.2. With these statements, Guzmán-Ceballos alerted the district court of his procedural challenge to his sentence, which the district court acknowledged before concluding the sentencing hearing. Because Guzmán-Ceballos adequately preserved his procedural challenge, we review his claim accordingly.

### B. Minor Role Adjustment

We now consider the merits of Guzmán-Ceballos's procedural challenge to his sentence. District courts "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007). Section 3B1.2 of the Guidelines allows the district court to decrease a defendant's offense level for being somewhere between a "minimal" or a "minor" participant in the offense. See U.S.S.G. § 3B1.2. A defendant requesting "a mitigating role

- 8 -

adjustment bears the burden of proving, by a preponderance of the evidence, that he is entitled to the downward adjustment." United States v. Pérez, 819 F.3d 541, 545 (1st Cir. 2016).

The sentencing court must conduct a "four-part analysis" to determine whether the defendant has met his burden and, thus, qualifies for an adjustment under § 3B1.2. United States v. Guía-Sendeme, 134 F.4th 611, 617 (1st Cir. 2025). First, the district court "must identify the universe of participants involved in the relevant criminal activity." Id. Second, after identifying the universe of participants, the district court "must order each participant along a continuum based on the degree of culpability in the criminal activity." Id. "Those who are primarily responsible stand on one end, while the least culpable participants . . . stand at the opposite end." United States v. Walker, 89 F.4th 173, 185 (1st Cir. 2023) (quotations omitted). Third, the district court then "must identify the average participant across all likely participants in the criminal scheme." Guía-Sendeme, 134 F.4th at 617.

At the last step, the district court must "compare the defendant's role in the criminal activity to the average participant's role." Id. "To measure a defendant's culpability against that of the average participant, the sentencing court must consider five non-exhaustive factors" outlined in the Guidelines

(henceforth, "the § 3B1.2 factors").[3]  Id. at 618; see also U.S.S.G. § 3B1.2 cmt. n.3(C).  Along with the § 3B1.2 factors, the court must also consider "the totality of the circumstances and . . . the facts of the particular case." Id. (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)).

Because determining a defendant's role in an offense is a fact-specific exercise, "we rarely reverse a district court's decision regarding whether to apply a minor role adjustment." Walker, 89 F.4th at 185 (quoting United States v. Andino-Rodríguez, 79 F.4th 7, 31 (1st Cir. 2023)).  Notwithstanding this deferential standard, "[a] district court by definition abuses its discretion when it makes an error of law." United States v. Quirós-Morales, 83 F.4th 79, 85 (1st Cir. 2023) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  The district court commits reversible

---

[3] The § 3B1.2 factors are as follows:  1) the degree to which the defendant understood the scope and structure of the criminal activity; 2) the degree to which the defendant participated in planning or organizing the criminal activity; 3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; 4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; 5) the degree to which the defendant stood to benefit from the criminal activity.  See U.S.S.G. § 3B1.2 cmt. n.3(C).

legal error when it fails to perform the correct mitigating role analysis.  See Guía-Sendeme, 134 F.4th at 623.

Applying the law to this case, we agree with Guzmán-Ceballos that the district court did not engage in the necessary four-part analysis before rejecting his objection to the PSR.  The district court did not identify the universe of participants, nor did it order the participants along a continuum of culpability to identify the average participant in the trafficking scheme.  Neither did the district court compare Guzmán-Ceballos's role in the trafficking operation to that of the average participant, which includes considering the § 3B1.2 factors.  Rather, the district court stated its belief that the Guidelines calculations in the PSR "satisfactorily reflect the components of this offense by considering its nature and circumstances."  In reaching that conclusion, the district court mentioned that it had considered "other sentencing factors" under 18 U.S.C. § 3553(a) and Guzmán-Ceballos's "participation" in the offense.  Since it is not apparent from the record that the district court performed the necessary inquiry into Guzmán-Ceballos's role in the drug trafficking scheme, we must vacate his sentence and remand for resentencing.

The government argues that the district court adequately identified the universe of participants by limiting its inquiry to the three people on the boat.  Again, we disagree.  As we have

explained, when determining the universe of participants, sentencing courts must first make a legal determination to ascertain the scope of the relevant conduct for which the defendant is being held accountable and then must perform an "invariably fact-specific" inquiry to identify the discernable participants involved in the particular conduct. See Guía-Sendeme, 134 F.4th at 622 (quoting United States v. Arias-Mercedes, 901 F.3d 1, 7 (1st Cir. 2018)). In drug trafficking operations such as the one described in this case, "[l]imiting the universe of participants to only those aboard 'the hazardous voyage' when performing a mitigating role analysis, as the district court did here, is inconsistent with the Guidelines' intent for courts to consider a defendant's role based on all relevant conduct under U.S.S.G. § 1B1.3." Id. at 620. Instead, the Guidelines call on the district court to "compare the defendant against all likely participants involved with the shipment, including those involved with the shipment's preparation and efforts to avoid detection." Id. In his objections to the PSR, Guzmán-Ceballos noted that there were "at least six others at the beach" when the boat departed from the Dominican Republic. Nonetheless, the district court did not consider the record evidence to determine whether there were other discernible participants in the drug shipment outside of the

"three people on th[e] boat."  That was error under our § 3B1.2 precedent.

The government also posits that the district court did not err in failing to expressly mention the § 3B1.2 factors, insisting that the record shows that "the district court clearly had [the § 3B1.2] factors" and Guzmán-Ceballos's "relative culpability in mind" when it considered his objections to the PSR. While the district court's analysis of the § 3B1.2 factors need not be "extensive," it must include "both a judgment about the defendant's own conduct and a comparison to the other participants."  Walker, 89 F.4th at 187.  The district court's decision here lacks any mention or reference to the § 3B1.2 factors, let alone, any meaningful analysis of them.  But, even if we assumed that the district court's mention that Guzmán-Ceballos did not "really benefit from the venture" means that it had in mind one of the § 3B1.2 factors, we still cannot affirm on that basis alone.  See Guía-Sendeme, 134 F.4th at 624 n.5 (explaining that although "courts need not list expressly the factors enumerated in Application Note 3(C) . . . courts must address all § 3B1.2 factors that are pertinent to the inquiry" (citation omitted)); see also United States v. Wynn, 37 F.4th 63, 68 (2d

- 13 -

Cir. 2022) (vacating sentence because the district court failed to consider all relevant mitigating role factors).

Our conclusion here is bolstered by the district court's lack of explanation for rejecting Guzmán-Ceballos's objection. The district court simply stated it could not "grant those objections." That is insufficient. As we have repeatedly held, "sentencing courts must give sufficient explanation to 'allow for meaningful appellate review.'" Walker, 89 F.4th at 187 (quoting Gall, 552 U.S. at 50).

### III. CONCLUSION

For the foregoing reasons, we **vacate** Guzmán-Ceballos's sentence and **remand** for resentencing in accordance with this opinion.

**So ordered**.